**CONFORMED COPY**

FILED
CLERK, U.S. DISTRICT COURT

MAR 1 2 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                                DEPUTY

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    Marshall M. Searcy III (Bar No. 169269)
     marshallsearcy@quinnemanuel.com
3  865 S. Figueroa St., 10th Floor
4  Los Angeles, California 90017
   Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6
7  Attorneys for Defendant Pfizer Inc.

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  LINDA ROY, DEBORAH GIBSON,          CASE NO.: CV14-1832 JFW-MRWx
    JANET HANSON, EVALINA
12  ROXANNE MOORE, ARLENE           )
    BECKWITH, SUZANNE               )
13  BIENIEWICZ, GUDFRIDUR.          )
    BISBEE, SANDRA BURNETT, JEAN    )
14  CASEY, BERNICE CASSIDY,         )   NOTICE OF REMOVAL
    JOSEPHINE CHESTNUT, MARY        )
15  CLARK, ANNIE COLEMAN,           )
    DELORES CONGROVE, ROSE          )
16  CONLEY, MOLLIE CORNS, MARIA     )
    COTTO, SHARI DANN, MARIA        )
17  DIAZ, CAROL EBERT, BERNITA      )
    ELKO, LESSEE ELZA, DONNA        )
18  EMERSON, LUZ ESCALERA,          )
    LELIA FERGUSON, KAREN
19  FETHEROLF, YOLANDA R.
    FLANAGAN, THERESA FLOWERS,
20  VICKIE FORESMAN, CYNTHIA
    FORTSON, ANNA GRESKO,
21  GLADYS GUADALUPE, JESSIE
    HAMILTON, SANDRA HAUN,
22  KIMBERLEA HAYNES, MARTHA
    HICKS, EMMA HICKSON,
23  SHIRLEY HUDSON, CARMELLA
    JACKSON, RHODELLA JONES,
24  JEANIE JURGEIT, CAROL KELLEY,
    SUSAN KENNEDY, ROBIN
25  LABERTAGAVADIN, MARLENE
    LAVANGO, LORI LAWRENCE,
26  DONNA LAWSON, DONNA LEWIS,
    SANDRA LEWIS, MARY LOU
27  MARGARET MARTIN, MARY
    MCKNIGHT, DOUGLETHA

28

─────────────────────────────────────

1

MCNEAL, LINDA S. MORAN,
JUDITH MORGAN, LINDA
MORTON, LYVONNE MOSS, LENA
MURCH, ANITA OPERARIO,
MICHELENA PARKER., VIRGINIA
PETAK, CAROL PETERS, NINA
PORTER, EMMA PRATT, MINETTE
PRICE, PATTI REEDER, NORA
REYNOLDS, ELIZABETH RHOADS,
ANNA RIDER, LACHELLE
ROGERS, LOIS ROSENHAHN,
POONIA SAMUEL, LINDA SAURER,
CHRISTINE SHAFER,
BERNADETTE SIROCKA, ELLA
SMITH, TONIA SMITH, PATRICIA
SOSKIN, TERRY SPRINGER,
CHERYL STARCHER, CAROL
STEINIGER, JANICE STEWART,
LAURA STEWART, BEATRICE
TUCKER, KATHIE VAN EPPS,
GILA VAN VALKENBURG,
CAROLYN WAHL, BARBARA
WEINTRAUB, DOLORES WIEST,
AND BARBARA WILLIAMS,

                     Plaintiffs,

          v.


PFIZER, INC., MCKESSON
CORPORATION, and JOHN DOES
1-50,

                     Defendants.

---

Defendant Pfizer Inc. ("Pfizer"), by its undersigned attorneys, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, to the United States District Court for the Central District of California. As grounds for removal, Pfizer states as follows:

## BACKGROUND

1.    In this action filed in California Superior Court on , Plaintiffs, who are 90 different unrelated individuals, allege that they developed type II diabetes as a result of their use of Lipitor, a prescription medication approved by the FDA to lower cholesterol and for other indications. (*See, e.g.,* Compl. ¶ 1 (attached as Ex. A).)[1] Plaintiffs assert their claims against Pfizer, the manufacturer of Lipitor, and a single alleged distributor of Lipitor, the California-based McKesson Corp. ("McKesson").

2.    On September 27, 2013, an amended petition for coordination was filed with the California Judicial Council under California Code of Civil Procedure § 404.1 seeking the coordination before "[o]ne judge . . . for all purposes" of all California state-court actions alleging similar personal injuries from Lipitor, which, at the time, consisted of 8 actions involving 21 plaintiffs. (Am. Pet. for Coord. at 6-7 (the "Petition" or "Am. Pet.," attached as Ex. B) (quoting Cal. Code Civ. Proc. § 404.1).) The Petition stated that the Lipitor actions satisfied "the criteria codified" in section 404.1, citing the presence of "common questions of fact or law" and the need to avoid "duplicative and inconsistent rulings, orders or judgments." (*See id.*)

3.    The Declaration submitted in support of coordination, as well as additional responses submitted by Plaintiffs in support of coordination, similarly emphasized the presence of common questions of law and fact and the desire to avoid inconsistent judgments:

_____

[1]    All Exhibits are attached to the supporting Declaration of Marshall Searcy.

- "The included actions require resolution of similar or even identical factual and legal issues . . . . Coordination will avoid the disadvantages of duplicative and potentially inconsistent rulings, orders, and judgments." (Zukin Supp. Decl. (attached as Ex. C) ¶ 8.)

- "The actions identified in the Amended Petition all involve significant common questions of law and fact." (Parker Resp. (attached as Ex. D) at 4; Kiesel Resp. (attached as Ex. E) at 4.)

- "Failure to coordinate the cases identified in the Amended Petition would result in the disadvantages of duplicative and potentially inconsistent rulings orders, and judgments. Common issues should be adjudicated in a single proceeding in front of a single judge, with any appeals lying before the same Court of Appeal." (Parker Resp. at 6; Kiesel Resp. at 6.)

4.      In addition, both the Petition and its supporting responses contemplated the filing of additional actions to be coordinated:

- "Petitioners' counsel is informed and believes that additional LIPITOR® injury cases will be filed within the next weeks." (Am. Pet. at 7.)

- "[I]t is very likely that additional cases will be filed in California." (Parker Resp. at 6; Kiesel Resp. at 6; Alanis Resp. (attached as Ex. F) at 4.)

- "Kiesel + Larson LLP anticipates filing numerous additional cases against the same defendants, and I believe these additional cases will be filed in the next 45 days." (Zukin Supp. Decl. ¶ 4.)

- "I anticipate that, within the next several months, hundreds of additional cases alleging similar injuries arising out of ingestion of Lipitor will be filed in California courts." (Zukin Supp. Decl. ¶ 6.)

5.      On January 28, 2014, 4 California Lipitor cases involving 7 plaintiffs were coordinated in Los Angeles County Superior Court before Hon. Jane L. Johnson pursuant to California Code of Civil Procedure § 404.1 as JCCP No. 4761 (the "California Lipitor Coordination").

6.      In connection with a status conference held on February 25, 2014, in the California Lipitor Coordination, the Plaintiffs' counsel who filed the Petition

proffered to Pfizer a list of additional California Lipitor cases proposed to be added to the coordinated proceeding. (Table of Cases (attached as Ex. G).) During the conference, Plaintiffs' counsel referred to these cases as proposed to be included in the California Lipitor Coordination.[2] Pfizer began to be served in these cases around that time, and as of February 20, 2014, Pfizer had been served in cases embracing claims by more than 100 plaintiffs in total. Together, all Lipitor cases coordinated or proposed to be coordinated embraced the claims of more than 3000 plaintiffs.

7.    Moreover, on March 3, 2014, Plaintiffs' leadership in the California Lipitor Coordination submitted a proposed order stating that "all cases filed in California state court against Pfizer, Inc. . . . alleging injuries related to the development of Type II diabetes . . . arising from the ingestion of Lipitor® are assigned to the Honorable  Jane L. Johnson, Los Angeles Superior Court for purposes of coordination," and streamlining procedures for coordination. (Proposed Amended Order re Add-On Procedures (attached as Ex. I).) This proposed order confirmed Plaintiffs' proposal that all Lipitor cases filed in California be coordinated pursuant to California Code of Civil Procedure § 404.1.

8.    These events created a removable "mass action" under the Class Action Fairness Act (CAFA) consisting of the California Lipitor Coordination and the cases proposed to be added (together, the "Subject Cases"), because it proposed that the monetary relief claims of more than 100 plaintiffs be tried jointly on the ground that they present common questions of law or fact.  In addition, subject matter jurisdiction is proper in this case under traditional diversity jurisdiction because McKesson is fraudulently joined and Plaintiffs are procedurally misjoined.

---

[2]   During the conference, the coordination judge also approved an order appointing certain firms to Plaintiffs' leadership in the California Lipitor Coordination. (*See* Order (attached as Ex. H).)

9.    Following removal, Pfizer will identify this action and all the Subject Cases to the JPML as suitable for transfer to the Lipitor MDL pending in the District of South Carolina.  *See* J.P.M.L. Rule 6.2(d).    Pfizer also intends to move to stay this case for two reasons.  First, because the jurisdictional and substantive issues in this case are likely to be raised in other cases in the Lipitor MDL, a stay is warranted pending the JPML's decision regarding transfer to the Lipitor MDL, where, as numerous courts have held, such common issues can be resolved on an efficient and consistent basis.[3]  Second, to the extent the court determines that any issues of subject matter jurisdiction should be resolved in this forum, that determination should be stayed pending resolution of the Ninth Circuit's rehearing *en banc* proceedings in *Romo v. Teva Pharmaceuticals USA, Inc.*, No. 13-56310, and *Corber v. Xanodyne Pharmaceuticals, Inc.*, No. 13-56306, where the court is considering whether a proposal to coordinate the claims of 100 plaintiffs under California Code of Civil Procedure § 404.1 gives rise to mass action jurisdiction.

---

[3]    *See J.W. v. Pfizer, Inc.*, 2013 WL 1402962, at *4 (N.D. Cal. Apr. 5, 2013) (granting Pfizer's motion to stay pending transfer to the Zoloft MDL "[i]n light of the value of consistent rulings and efficient consideration of common issues"); *Beatty v. Merck & Co.*, 2006 WL 2943090, at *1 (E.D. Cal. Oct. 13, 2006) ("Given the number of cases that present this exact jurisdictional question[,] . . . the interest of judicial economy favors staying this action pending its transfer to the MDL proceeding."); *Bledsoe v. Janssen Pharmaceutica*, 2006 U.S. Dist. LEXIS 5524, at *3 (E.D. Mo. Feb. 13, 2006) ("[J]udicial economy weighs heavily in favor of granting the requested stay . . . [which] will conserve judicial resources because only one court will need to make [pretrial] rulings.").

## GROUNDS FOR REMOVAL

## I.    THIS CASE IS REMOVABLE UNDER CAFA'S MASS ACTION PROVISIONS

10.    This case is removable pursuant to the mass action provisions of CAFA, enacted within the diversity jurisdiction statute at 28 U.S.C. § 1332(d)(11). An action is removable as a mass action where it meets the following requirements:

a.    It involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, *see id.* § 1332(d)(11)(B)(i);

b.    The aggregate amount in controversy exceeds $5,000,000 and the claims of the individual plaintiffs each exceed the amount of $75,000, *see id.* §§ 1332(a), (d)(2), (d)(11)(B)(i); and

c.    Any plaintiff is a citizen of a State different from any defendant, *see id.* § 1332(d)(2)(A).

11.    As set forth below, this action and the other Subject Cases satisfy all the jurisdictional requirements for a mass action. In addition, Pfizer has satisfied all procedural requirements for removal of a mass action pursuant to 28 U.S.C. §§ 1446 and 1453. Accordingly, mass action removal is proper.

### A.    Plaintiffs Proposed That the Claims of More Than 100 Persons Be Tried Jointly

12.    The Subject Cases are removable as a mass action because the proposal to join more than 3000 plaintiffs in the California Lipitor Coordination constituted a proposal to try the claims of those plaintiffs jointly. Two courts of appeal have held that a state-court request to transfer separate cases for plenary proceedings before a single judge renders those cases a "mass action" where, as here, the coordination petition requests relief that, if granted, would require the individual actions to be tried jointly. *In re Abbott Labs., Inc.*, 698 F.3d 568 (7th Cir. 2012); *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160 (8th Cir. 2013).

13.     In *Abbott*, the Seventh Circuit held that a proposal giving rise to mass action jurisdiction need not specifically request actions to be tried jointly because "a proposal for a joint trial can be implicit." 698 F.3d at 572; *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008); *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011). The Seventh Circuit found that the plaintiffs implicitly requested the actions to be tried jointly because they sought consolidation "'through trial' and "'not solely for pretrial proceedings'" and asserted that consolidation "through trial 'would also facilitate the efficient disposition of a number of universal and fundamental substantive questions applicable to all or most Plaintiffs' cases *without the risk of inconsistent adjudication* in those issues between various courts.'" *Abbott*, 698 F.3d at 573 (citation omitted). The court observed that, because "a joint trial does not have to encompass relief," either "a trial on liability" only or a trial of "'exemplary plaintiffs, followed by application of issue or claim preclusion'" as to over 100 other plaintiffs would constitute a proposal that the actions be tried jointly. *Id.* (citation omitted). The Seventh Circuit concluded that "it is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases," and "[i]n either situation, plaintiffs' claims would be tried jointly." *Id.*

14.     The Eighth Circuit also recognized mass action jurisdiction in *Atwell*, a medical device products liability case, where plaintiffs in three separate Missouri state court actions of less than 100 plaintiffs each moved to transfer their cases "to a single Judge for purposes of discovery and trial." 740 F.3d at 1163. Although the plaintiffs had initially attempted to limit their transfer request to pre-trial proceedings, the Eighth Circuit found that they had proposed the actions be tried jointly by urging transfer "to a single judge who could 'handle these cases for consistency of rulings, judicial economy, [and] administration of justice,'" and

explaining that they wanted the proceeding "'assigned to the judge that's going to try the case.'" *Id.* at 1164-65. The Eighth Circuit concluded that, "[a]s in *Abbott Labs*, 'it is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases," and the cases were therefore removable as a mass action. *Id.* at 1165-66 (quoting *Abbott*, 698 F.3d at 573).[4]

15.   Here, the proposed addition of the new actions to the California Lipitor Coordination under California Code of Civil Procedure § 404.1 presents the same two key factors that the Seventh and Eighth Circuits held constituted a request for actions to be tried jointly in *Abbott* and *Atwell*. Either is sufficient to establish mass action jurisdiction over the Subject Cases here.

16.   First, like the *Abbott* plaintiffs' request for consolidation "through trial" and the *Atwell* plaintiffs' request for transfer "to a single Judge for purposes of discovery and trial," Plaintiffs here proposed coordination before "[o]ne judge . . . for all purposes." (Am. Pet. at 6-7.) This is significant because the authority of a

---

[4]   In *Romo v. Teva Pharm. USA, Inc.*, 731 F.3d 918, 923 (9th Cir. 2013), a divided panel of the Ninth Circuit split from the view adopted by the Seventh and Eighth Circuits and held that, despite similar requests to grant coordination to avoid inconsistent judgments, a California coordination petition did not give rise to mass action jurisdiction in these circumstances. However, the Ninth Circuit recently granted rehearing *en banc* in *Romo*, to be conducted in June 2014, and ordered that the panel opinion "shall not be cited as precedent by or to any court of the Ninth Circuit." *Romo v. Teva Pharm. USA, Inc.*, No. 13-56310, Dkt. 74 (9th Cir. Feb. 10, 2014) (order granting rehearing *en banc*). In addition, the Sixth Circuit, which was also considering subject matter jurisdiction over cases that were part of the same putative mass action as *Romo*, recently stayed proceedings in those appeals pending the Ninth Circuit's *en banc* ruling, observing that its own decision "would turn on issues involving the interpretation of the California rules of procedure that are likely to be resolved by the en banc Ninth Circuit." *In re McKesson Corp.*, Nos. 13-0504, et al. (6th Cir. Mar. 5, 2014) (order staying proceedings).

coordination judge under California procedure is plenary, and embraces coordination for trial. Indeed, California's Rules of Court presume trial by the coordination judge, who is "assigned . . . to hear and determine coordinated actions," Cal. R. Ct. 3.501(9), and "*must* assume an active role in managing all steps of the pretrial, discovery, *and trial* proceedings." *Id.* 3.541(b) (emphasis added); *see also id.* 3.541(b)(3) (providing coordination judge discretion to "[o]rder any issue or defense to be tried separately and before trial of the remaining issues"). Plaintiffs who have supported coordination of the Lipitor actions in California state court made clear that they seek trial by the coordination judge, contending that "[c]ommon issues should be adjudicated in a single proceeding in front of a single judge, *with any appeals lying before the same Court of Appeal*." (Parker Resp. at 6 (emphasis added); *accord* Kiesel Resp. at 6.)

17.    Second, like the *Abbott* and *Atwell* plaintiffs, plaintiffs here have requested coordination to avoid "duplicative and inconsistent rulings, orders or judgments." (*See* Am. Pet. at 6-7.) The petitioning plaintiffs likewise averred that "[t]he included actions require resolution of similar or even identical factual and legal issues" and that "[c]oordination will avoid the disadvantages of duplicative and potentially inconsistent rulings, orders, and judgments." (Zukin Supp. Decl. ¶ 8.) Plaintiffs who supported the Petition similarly argued that "[f]ailure to coordinate the cases identified in the Amended Petition would result in the disadvantages of duplicative and potentially inconsistent rulings orders, and judgments." (Parker Resp. at 6; *accord* Kiesel Resp. at 6.) That this desire to avoid inconsistent judgments contemplates matters for trial is apparent from the common issues as to which the plaintiffs have sought joint determination, almost all of which are matters that can be decided in plaintiffs' favor *only* at trial. These matters identified by plaintiffs include, for example, "[w]hether the Plaintiffs are entitled to compensatory damages and/or restitution," and "[w]hether the Defendants are liable

for punitive or exemplary damages, a matter to determined when appropriate." (Parker Resp. at 4.) It is thus "difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial," *Abbott*, 698 F.3d at 573, and these claims have been proposed to be tried jointly.

18.   This case is subject to these proposals for coordination.[5] Indeed, this case was one of the cases that the plaintiffs specifically identified as proposed to be joined to the California Lipitor Coordination. (Table of Cases (attached as Ex. G).) Moreover, Plaintiffs' leadership in the California Lipitor Coordination recently submitted a proposed order stating that "all cases filed in California state court against Pfizer, Inc. . . . alleging injuries related to the development of Type II diabetes . . . arising from the ingestion of Lipitor® are assigned to the Honorable Jane L. Johnson, Los Angeles Superior Court for purposes of coordination," making the proposed inclusion of this case in the California Lipitor Coordination unmistakable. (Proposed Amended Order re Add-On Procedures.)

19.   Accordingly, plaintiffs have proposed that the Subject Cases, which embrace the monetary relief claims of more than 100 plaintiffs, be tried jointly, and the first requirement of mass action removal is satisfied.

**B.   The Amount in Controversy Is Satisfied**

20.   Both the individual $75,000 and aggregate $5,000,000 amount in controversy requirements for mass action removal are readily satisfied. *See* 28 U.S.C. §§ 1332(a), (d)(2), (d)(11)(B)(i).[6]

---

[5]   While a mass action does not result where individual actions are joined "upon motion of a defendant," 28 U.S.C. 1332(d)(11)(B)(ii)(II); *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009); *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010), there is no such barrier where, as here, the proposal to try actions jointly originates with plaintiffs.

[6]   Pfizer does not, however, concede that Plaintiffs would be entitled to any of the relief sought in the Complaint.

21.    First, it is apparent from the face of the Complaint, and the serious nature of the injuries alleged by each Plaintiff, that the amount in controversy exceeds $75,000 for each Plaintiff, just as it is for the claims in the other actions embraced by the California Lipitor Coordination.  Plaintiffs claim to have developed type II diabetes, a chronic condition, due to Lipitor, (Compl. ¶¶ 1-90), "injuries and potential life threatening side effects" (*Id.* ¶ 116.), as well as "injuries associated with elevated blood glucose levels." (*Id.* ¶ 118.)

22.    Where, as here, Plaintiffs allege serious bodily injuries, courts have readily found that the amount-in-controversy requirement is satisfied.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001).  In addition, compensatory and punitive damages in excess of the jurisdictional amount of $75,000 have been awarded in products liability cases in California.  *See, e.g., Stewart v. Union Carbide Corp.*, 117 Cal. Rptr. 3d 791, 804 (Cal. Ct. App. 2010); *Karlsson v. Ford Motor Co.*, 45 Cal. Rptr. 3d 265, 282-83 (Cal. Ct. App. 2006); *Jones v. John Crane, Inc.*, 35 Cal. Rptr. 3d 144, 161 (Cal Ct. App. 2005).  Other federal courts have thus concluded that the amount in controversy exceeded $75,000 in similar pharmaceutical cases.  *See, e.g., Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *accord Copley v. Wyeth, Inc.*, 2009 WL 1089663, at *2-3 (E.D. Pa. Apr. 22, 2009).  In addition, because Plaintiffs' demands for punitive damages are also included in the amount in controversy, *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007), it is evident, from the face of the Complaint that the amount of recovery sought by each Plaintiff exceeds $75,000.

23.    Second, because each individual Plaintiff's claim exceeds $75,000, the aggregate amount in controversy for this mass action, which embraces the claims of more than 3000 individual plaintiffs, necessarily exceeds $5,000,000, since $75,000 multiplied by 3000 is $225,000,000.

24.    Accordingly, the amount-in-controversy requirement is satisfied.

**C.    The Diversity Requirement Is Satisfied**

25.    The diversity requirements for mass action removal have been satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).    While diversity removal normally requires complete diversity between plaintiffs and defendants, for removal of a mass action, only "minimal diversity" is required—i.e., that at least one plaintiff be diverse from one defendant. *See id.* This requirement is readily satisfied here:  Plaintiff Linda Roy, a citizen of California (Compl. ¶ 1), is diverse from Pfizer, a citizen of Delaware and New York. (*Id.* ¶ 91.)

26.    Accordingly, all the jurisdictional requirements of mass action removal are satisfied.

**II.    REMOVAL IS PROPER BECAUSE PLAINTIFF'S CLAIMS ARE SUBJECT TO TRADITIONAL DIVERSITY JURISDICTION**

27.    The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action between citizens of different States, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.  The amount in controversy is satisfied as to each Plaintiff for the reasons set forth in I.B above, and the complete diversity requirement is satisfied but for Plaintiffs' fraudulent joinder of McKesson and the procedural misjoinder of Plaintiffs.

**A.    Parties and Diversity of Citizenship**

28.    Defendant McKesson is incorporated in Delaware and headquartered in California and is therefore a citizen of Delaware and California. (*See* Compl. ¶ 93.)

29.    Defendant Pfizer is incorporated in Delaware and headquartered in New York and is therefore a citizen of Delaware and New York. (*See id.* ¶ 91.)

30.    The citizenship of fictitious defendants DOES 1-50 is disregarded for purposes of diversity. 28 U.S.C. § 1441(b)(1).

31.    Plaintiff Linda Roy is a citizen of California.  (*Id.* ¶ 1.)

32.    Plaintiff Deborah Gibson  is a citizen of California.  (*Id.* ¶ 2.)

33.    Plaintiff Janet Hanson is a citizen of California.  (*Id.* ¶ 3.)

34.    Plaintiff Rosanne Moore is a citizen of California.  (*Id.* ¶ 4.)

35.    Plaintiff Arlene Beckwith is a citizen of New York.  (*Id.* ¶ 5.)

36.    Plaintiff Suzanne Bieniwicz is a citizen of New York.  (*Id.* ¶ 6.)

37.    Plaintiff Gudfridur Bisbee is a citizen of Ohio.  (*Id.* ¶ 7.)

38.    Plaintiff Sandra Burnett is a citizen of New York.  (*Id.* ¶ 8.)

39.    Plaintiff Jean Casey is a citizen of New York.  (*Id.* ¶ 9.)

40.    Plaintiff Bernice Cassidy is a citizen of Ohio.  (*Id.* ¶ 10.)

41.    Plaintiff Josephine Chestnut is a citizen of New York.  (*Id.* ¶ 11.)

42.    Plaintiff Mary Clark is a citizen of New York.  (*Id.* ¶ 12.)

43.    Plaintiff Annie Coleman is a citizen of Ohio.  (*Id.* ¶ 13.)

44.    Plaintiff Delores Congrove is a citizen of Ohio.  (*Id.* ¶ 14.)

45.    Plaintiff Rose Conley is a citizen of New York.  (*Id.* ¶ 15.)

46.    Plaintiff Mollie Corns is a citizen of Ohio.  (*Id.* ¶ 16.)

47.    Plaintiff Maria Cotto is a citizen of New York.  (*Id.* ¶ 17.)

48.    Plaintiff Shari Dann is a citizen of New York.  (*Id.* ¶ 18.)

49.    Plaintiff Maria Diaz is a citizen of New York.  (*Id.* ¶ 19.)

50.    Plaintiff Carol Ebert is a citizen of Ohio.  (*Id.* ¶ 20.)

51.    Plaintiff Bernita Elko is a citizen of Ohio.  (*Id.* ¶ 21.)

52.    Plaintiff Lessie Elza is a citizen of Ohio.  (*Id.* ¶ 22.)

53.    Plaintiff Donna Emerson is a citizen of Ohio.  (*Id.* ¶ 23.)

54.    Plaintiff Luz Escalera is a citizen of New York.  (*Id.* ¶ 24.)

55.    Plaintiff Lelia Ferguson is a citizen of Ohio.  (*Id.* ¶ 25.)

56.    Plaintiff Karen Fetherolf is a citizen of Ohio.  (*Id.* ¶ 26.)

57.    Plaintiff Yolanda R. Flanagan is a citizen of Ohio.  (*Id.* ¶ 27.)

58. Plaintiff Theresa Flowers is a citizen of Nevada.  (*Id.* ¶ 28.)

59. Plaintiff Vickie Foresman is a citizen of Ohio.  (*Id.* ¶ 29.)

60. Plaintiff Cynthia Fortson is a citizen of Ohio.  (*Id.* ¶ 30.)

61. Plaintiff Anna Gresko is a citizen of Ohio.  (*Id.* ¶ 31.)

62. Plaintiff Gladys Guadalupe is a citizen of New York.  (*Id.* ¶ 32.)

63. Plaintiff Jessie Hamilton is a citizen of Ohio.  (*Id.* ¶ 33.)

64. Plaintiff Sandra Haun is a citizen of New York.  (*Id.* ¶ 34.)

65. Plaintiff Kimberlea Haynes is a citizen of Ohio.  (*Id.* ¶ 35.)

66. Plaintiff Martha Kicks is a citizen of New York.  (*Id.* ¶ 36.)

67. Plaintiff Emma Hickson is a citizen of Ohio.  (*Id.* ¶ 37.)

68. Plaintiff Shirley Hudson is a citizen of Ohio.  (*Id.* ¶ 38.)

69. Plaintiff Carmella Jackson is a citizen of Nevada.  (*Id.* ¶ 39.)

70. Plaintiff Rhodella Jones is a citizen of Ohio.  (*Id.* ¶ 40.)

71. Plaintiff Jeanie Jurgeit is a citizen of Nevada.  (*Id.* ¶ 41.)

72. Plaintiff Carol Kelley is a citizen of New York.  (*Id.* ¶ 42.)

73. Plaintiff Susan Kennedy is a citizen of New York.  (*Id.* ¶ 43.)

74. Plaintiff Robin Labertagavadin is a citizen of New York.  (*Id.* ¶ 44.)

75. Plaintiff Marlene Lavango is a citizen of New York.  (*Id.* ¶ 45.)

76. Plaintiff Lori Lawrence is a citizen of Ohio.  (*Id.* ¶ 46.)

77. Plaintiff Donna Lawson is a citizen of Nevada.  (*Id.* ¶ 47.)

78. Plaintiff Donna Lewis is a citizen of Ohio.  (*Id.* ¶ 48.)

79. Plaintiff Sandra Lewis is a citizen of New York.  (*Id.* ¶ 49.)

80. Plaintiff Mary Lott is a citizen of New Jersey.  (*Id.* ¶ 50.)

81. Plaintiff Margaret Martin is a citizen of Ohio.  (*Id.* ¶ 51.)

82. Plaintiff Mary McKnight is a citizen of Nevada.  (*Id.* ¶ 52.)

83. Plaintiff Dougletha McNeal is a citizen of New Jersey.  (*Id.* ¶ 53.)

84. Plaintiff Linda S. Moran is a citizen of Ohio.  (*Id.* ¶ 54.)

85.   Plaintiff Judith Morgan is a citizen of Ohio.  (*Id.* ¶ 55.)

86.   Plaintiff Linda Morton is a citizen of Nevada.  (*Id.* ¶ 56.)

87.   Plaintiff LyVonne Moss is a citizen of Ohio.  (*Id.* ¶ 57.)

88.   Plaintiff Lena Murch is a citizen of New York.  (*Id.* ¶ 58.)

89.   Plaintiff Anita Operario is a citizen of Nevada.  (*Id.* ¶ 59.)

90.   Plaintiff Michelena Parker is a citizen of New York.  (*Id.* ¶ 60.)

91.   Plaintiff Virginia Petak is a citizen of Ohio.  (*Id.* ¶ 61.)

92.   Plaintiff Carol Peters is a citizen of Ohio.  (*Id.* ¶ 62.)

93.   Plaintiff Nina Porter is a citizen of New York.  (*Id.* ¶ 63.)

94.   Plaintiff Emma Pratt is a citizen of New Jersey.  (*Id.* ¶ 64.)

95.   Plaintiff Minette Price is a citizen of New York.  (*Id.* ¶ 65.)

96.   Plaintiff Patti Reeder is a citizen of Ohio.  (*Id.* ¶ 66.)

97.   Plaintiff Nora Reynolds is a citizen of New Jersey.  (*Id.* ¶ 67.)

98.   Plaintiff Elizabeth Rhoads is a citizen of Ohio.  (*Id.* ¶ 68.)

99.   Plaintiff Anna Rider is a citizen of Nevada.  (*Id.* ¶ 69.)

100.  Plaintiff Lachelle Rogers is a citizen of Ohio.  (*Id.* ¶ 70.)

101.  Plaintiff Lois Rosenhahn is a citizen of New York.  (*Id.* ¶ 71.)

102.  Plaintiff Poonia Samuel is a citizen of New York.  (*Id.* ¶ 72.)

103.  Plaintiff Linda Saurer is a citizen of Ohio.  (*Id.* ¶ 73.)

104.  Plaintiff Christine Shafer is a citizen of New York.  (*Id.* ¶ 74.)

105.  Plaintiff Bernadette Sirocka is a citizen of New Jersey.  (*Id.* ¶ 75.)

106.  Plaintiff Ella Smith is a citizen of Ohio.  (*Id.* ¶ 76.)

107.  Plaintiff Tonia Smith is a citizen of New York.  (*Id.* ¶ 77.)

108.  Plaintiff Patricia Soskin is a citizen of Nevada.  (*Id.* ¶ 78.)

109.  Plaintiff Terry Springer is a citizen of Nevada.  (*Id.* ¶ 79.)

110.  Plaintiff Cheryl Starcher is a citizen of Ohio.  (*Id.* ¶ 80.)

111.  Plaintiff Carol Steiniger is a citizen of New Jersey.  (*Id.* ¶ 81.)

112.  Plaintiff Janice Stewart is a citizen of New Jersey.  (*Id.* ¶ 82.)

113.  Plaintiff Laura Stewart is a citizen of New Jersey.  (*Id.* ¶ 83.)

114.  Plaintiff Beatrice Tucker is a citizen of New York.  (*Id.* ¶ 84.)

115.  Plaintiff Kathie Van Epps is a citizen of New York.  (*Id.* ¶ 85.)

116.  Plaintiff Gila Van Valkenburg is a citizen of New York.  (*Id.* ¶ 86.)

117.  Plaintiff Carolyn Wahl is a citizen of New York.  (*Id.* ¶ 87.)

118.  Plaintiff Barbara Weintraub is a citizen of New York.  (*Id.* ¶ 88.)

119.  Plaintiff Dolores Wiest is a citizen of New Jersey.  (*Id.* ¶ 89.)

120.  Plaintiff Barbara Williams is a citizen of New Jersey.  (*Id.* ¶ 90.)

121.  Thus, the sole barriers to complete diversity are the California citizenship of McKesson and the New York citizenship of Plaintiffs Arlene Beckwith, Suzanne Bieniwicz, Sandra Burnett, Jean Casey, Josephine Chestnut, Mary Clark, Rose Conley, Maria Cotto, Shari Dann, Shari Dann, Maria Diaz, Luz Escalera, Gladys Guadalupe, Sandra Haun, Martha Kicks, Carol Kelley, Susan Kennedy, Robin Labertagavadin, Marlene Lavango, Sandra Lewis, Lena Murch, Anita Operario, Michelena Parker, Nina Porter, Minette Price, Lois Rosenhahn, Poonia Samuel, Tonia Smith, Beatrice Tucker, Kathie Van Epps, Gila Van Valkenburg, Carolyn Wahl, and Barbara Weintraub, which may be disregarded due to the fraudulent joinder of McKesson and the procedural misjoinder of Plaintiffs. Following dismissal of McKesson and severance of this suit into separate actions for each Plaintiff family, this Court has traditional diversity jurisdiction over each resulting action where the parties are completely diverse.

**B.    McKesson Is Fraudulently Joined**

122.  McKesson's presence in the case does not defeat diversity jurisdiction because it was fraudulently joined.  A non-forum defendant may remove an action where the forum defendant "[was] 'fraudulently' named or joined solely to defeat diversity jurisdiction." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006).

123.    Under the fraudulent joinder doctrine, a court should disregard the citizenship of a defendant where, as here, there is "'no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant.'" *Taylor v. Jeppesen DataPlan, Inc.*, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (quoting *Plute v. Roadway Package Sys.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)); *BSD, Inc. v. Equilon Enters., LLC*, 2011 U.S. Dist. LEXIS 39905, at *15 (N.D. Cal. Mar. 31, 2011) (finding that defendant was fraudulently joined). Non-diverse or forum defendants are fraudulently joined—and their presence in the lawsuit is thus ignored for purposes of determining the propriety of removal—where no viable cause of action has been stated against them. *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761-62 (9th Cir. 2002); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100-01 (C.D. Cal. 2002); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (affirming district court's finding of fraudulent joinder and recognizing that a "reasonable" basis to predict that a plaintiff could prevail on his or her claims against the in-state defendants requires more than a "theoretical" basis); *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (pursuant to the fraudulent-joinder doctrine, a court should disregard the citizenship of an in-state defendant where, as here, "there is no reasonable basis for predicting that plaintiffs might establish liability . . . against the in-state defendants"). Here, Plaintiffs' claims against McKesson fail both as a matter of law and under the allegations of the Complaint.

124.    There is no possibility, based on the allegations in Plaintiffs' complaint, that Plaintiffs will be able to establish a cause of action against McKesson based on its alleged role in distributing Lipitor. As such, Plaintiffs' fraudulent joinder of McKesson does not prevent removal.

### 1. Plaintiffs' Claims Against McKesson Fail as a Matter of Law

125.   McKesson is fraudulently joined because Plaintiffs' claims against it fail as a matter of law. Initially, Plaintiffs' claims against McKesson are barred by federal preemption.

126.   Although Plaintiffs assert numerous causes of action against McKesson, those claims all fundamentally allege that state law required McKesson to take some different action with respect to Lipitor—McKesson should have changed the product's warnings, or its design, or should have simply stopped selling the product. The Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), show that McKesson cannot comply with these alleged requirements without violating federal law, and thus the claims against it are preempted.

127.   In *Mensing*, the Supreme Court held that claims challenging the warnings issued by generic drug defendants are preempted by the "duty of sameness" under the Hatch-Waxman amendments to the FDCA, which require that the warnings that accompany a generic prescription medication be the same as the branded version of the drug. *See* 131 S. Ct. at 2573-75. Because federal law "demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels," it was impossible for generic manufacturers to independently change the label to comply with alleged state-law duties, and the plaintiffs' claims were preempted. *Id.* at 2578.

128.   In *Bartlett*, the Supreme Court held that *Mensing* also applied to claims challenging the design of generic medications. In analyzing preemption, the Supreme Court considered the three potential avenues through which a generic defendant could comply with state-law duties imposed by products liability claims: (1) change the product's warnings; (2) change its design; or (3) stop selling it. *See* 133 S. Ct. at 2473-78. The Court held that none of these avenues was wide enough

to escape preemption—just as the duty of sameness bars generic defendants from making an independent labeling change, it precludes an independent design change, which is also practically impossible because a pharmaceutical product "is chemically incapable of being redesigned." *Id.* at 2475. Nor could the generic defendant's ability to "stop selling" its product defeat impossibility preemption, since that doctrine presumes an actor "is not required to cease acting altogether in order to avoid liability," and a contrary rule would render "impossibility pre-emption . . . 'all but meaningless.'" *Id.* at 2477 (quoting *Mensing*, 131 S. Ct. at 2579).

129. The dispositive practical impact of *Mensing* and *Bartlett* in the federal courts has been unmistakable. In the wake of those decisions, seven courts of appeal, including the Ninth Circuit, have granted or affirmed dismissal of all products liability claims against generic defendants, frequently including the same causes of action that Plaintiffs assert here.[7]

130. *Mensing* and *Bartlett* apply equally to bar claims against distributors such as McKesson, who have even less control over their products than generic defendants. Indeed, McKesson is not simply required to use the same labeling or design as the branded medication, it is *prohibited* from making any changes to the labeling used by the manufacturer. *See* 21 C.F.R. § 314.70 (limiting label change authority to approved applicants, who are manufacturers). Were McKesson to change the FDA-approved labeling of these products, it would render them misbranded under federal law. *See* 21 U.S.C. § 352. Nor could McKesson change

---

[7] *See, e.g., Gaeta ex rel. A.G. v. Perrigo Pharm. Co.*, 469 F. App'x 556 (9th Cir. 2012); *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014); *Morris v. PLIVA, Inc.*, 713 F.3d 774 (5th Cir. 2013); *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 383 (6th Cir. 2013); *Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1276 (10th Cir. 2013); *Guarino v. Wyeth, LLC*, 719 F.3d 1245 (11th Cir. 2013).

the design of those medications, as this would result in an unapproved new drug. *Id.* § 321(p)(1); *see also Bartlett*, 133 S. Ct. at 2475 (finding design change impossible because "altered chemical would be a new drug that would require its own NDA to be marketed in interstate commerce"). Distributing a misbranded product or unapproved new drug would render McKesson liable for fines and other penalties under federal law. *See* 21 U.S.C. §§ 331(a), (d), 333(a). Nor can Plaintiffs charge that McKesson should have stopped selling Lipitor—that rationale fails just as it did in *Bartlett*, for it "would render impossibility pre-emption a dead letter and work a revolution in [the Supreme] Court's pre-emption case law." 133 S. Ct. at 2470. As in *Bartlett*, none of the avenues for complying with state law is available to McKesson.[8]

131. Thus, because McKesson "could not 'independently do under federal law what state law [allegedly] requires of it,'" courts have recognized that claims against distributors of prescription medications are barred by impossibility preemption. *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at *4 (D.N.J. Jan. 17, 2012) (citation omitted); *accord Stevens v. Cmty. Health Care, Inc.*, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011).

---

[8] In *Bartlett*, the Supreme Court also rejected the plaintiffs' arguments that the operative New Hampshire law imposed an "absolute liability" regime that simply required manufacturers to pay compensation to individuals injured by their products. New Hampshire followed the Restatement (Second) of Torts, which was not purely compensatory, but "impose[d] . . . substantive duties on manufacturers" that conflicted with federal law. *Bartlett*, 133 S. Ct. at 2473-74. That argument fails not only under New Hampshire law, but under the law of every state, none of which has adopted an "absolute liability" regime. *See* R. Kaye, Am. L. of Prods. Liab. 3d § 16.5 (2013) (collecting cases); *Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1166 (Cal. 1978) ("From its inception, however, strict liability has never been, and is not now, *absolute* liability.").

1  Liability against McKesson is foreclosed as a matter of law, and it is fraudulently
2  joined.[9]

3      132.  In addition, there is no possibility that Plaintiffs can prevail against
4  McKesson under the home state law that governs their claims. *See Boaz v. Boyle &*
5  *Co.*, 46 Cal. Rptr. 2d 888, 896 (Cal. Ct. App. 1995). Many states reject liability
6  against distributors as a matter of common law or of statute, *see, e.g.*, Colo. Rev. Stat.
7  § 13–21–402(1); *Walker v. Decora, Inc.*, 471 S.W.2d 778, 784 (Tenn. 1971), and
8  Plaintiffs from those states thus cannot state a claim against McKesson. Thus,
9  following the severance of actions described in subsection C below, operative state
10 law compels the conclusion that McKesson is fraudulently joined as to citizens of
11 states that prohibit distributor liability, and its California citizenship is no bar to
12 diversity jurisdiction over those actions.

13     **2.  Plaintiffs' Claims Against McKesson Are Inadequately Pled**

14     133.  In addition, McKesson is fraudulently joined because Plaintiffs have
15 failed to assert sufficient factual allegations against it. *See, e.g., Brown v. Allstate*
16 *Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants

17 _____

18 [9]  Federal courts may and should consider defenses such as preemption as a basis for
   fraudulent joinder. Indeed, the Ninth Circuit in *Ritchey v. Upjohn Drug Co.*, 139
19 F.3d 1313 (9th Cir. 1998), recognized that fraudulent joinder can be established
20 through an affirmative defense—there, the statute of limitations—provided it is not
   exogenous to the cause of action. *Id.* at 1319. Here, preemption, like the statute of
21 limitations, is non-exogenous; California courts apply it "through the medium of
22 demurrer," *id.* at 1320, "even though, technically, [it] is not part of the cause of
   action itself." *Id.* at 1319; *see also, e.g., Teva Pharm. USA, Inc. v. Superior Court*,
23 158 Cal. Rptr. 3d 150, 153 (Cal. Ct. App. 2013) (applying preemption on demurrer).
24 Nor does the use of preemption to establish fraudulent joinder violate the common
   defense rule, since it does not "require[] an inquiry into the merits of the plaintiff's
25 claims against *all* defendants." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045
26 (9th Cir. 2009) (emphasis added). Indeed, the Supreme Court has specifically held
   the impossibility preemption defense generally fails as to brand-name defendants
27 like Pfizer. *See Wyeth v. Levine*, 555 U.S. 555 (2009).

28 _____

fraudulently joined where "no material allegations against [the in-state defendants] are made"); *Lyons v. Am. Tobacco Co.*, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident distributor defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

134. When making the fraudulent joinder determination, a court must only consider the allegations pled in the complaint as of the time of removal and should not speculate about facts or claims that plaintiff failed to plead. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992).

135. In evaluating whether a defendant is fraudulently joined for purposes of removal, this Court applies federal, rather than state, pleading standards under an analysis "'akin to that of a Rule 12(b)(6) motion to dismiss.'" *Johnson v. DePuy Orthopaedics, Inc.*, 2012 U.S. Dist. LEXIS 74450, at *5-7 (N.D. Ohio May 30, 2012) (citation omitted) (observing that "'[t]he [ ] [federal] rules apply to a civil action after it has been removed from a state court'" and "pending a resolution of the district court's jurisdiction" and concluding that "Plaintiffs' arguments regarding application of Kentucky's pleading standards are without merit"); *see Isaacs v. Broido*, 358 F. App'x 874, 877 (9th Cir. 2009) (noting that "the Rule 12(b)(6) inquiry and the fraudulent joinder inquiry substantially overlap on the issue of failure to state a claim" (citing *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975))); *Sessions*, 517 F.2d at 760 (applying "the standards for dismissal under the Federal Rules" in a fraudulent joinder analysis).

136. Thus, in order to state a proper claim against McKesson, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" and allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions and threadbare recitals of elements, supported by mere conclusion,

simply do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citation omitted). Rather, Federal Rule of Civil Procedure 8 "'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented.'" *Id.* at 555 n.3 (citation omitted). Pleadings such as Plaintiffs' claims against McKesson here that fail to set forth factual allegations to support asserted legal conclusions should be dismissed for failure to state a claim. *Id.* at 555; *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

137.   Here, Plaintiffs' only relevant allegation concerning the conduct of McKesson is that it "touts itself as . . . the largest pharmaceutical distributor in North America distributing one-third of the medications used daily in North America." (Compl. ¶ 93.) Yet since McKesson is only one of several national distributors of prescription medications, such facts, even if true, are insufficient to satisfy Plaintiffs' burden to plead facts showing that McKesson actually distributed the Lipitor used by Plaintiffs, a fact that the Complaint improperly pleads only on "information and belief." (*Id.* ¶ 103.) Notably, Plaintiffs do not even identify the pharmacy where Plaintiffs' Lipitor prescriptions were allegedly filled. Thus, Plaintiffs fail to satisfy their burden of plausibly pleading that McKesson distributed the Lipitor that Plaintiffs ingested.

138.   Moreover, Plaintiffs assert no specific allegations or facts against McKesson to maintain any of their causes of actions against it. Plaintiffs' theory of recovery—that the product allegedly was defective or mislabeled—has nothing to do with McKesson's role as a distributor of the product. Plaintiffs do not assert any specific facts connecting McKesson to any of the individual claims asserted in their Complaint. *See Camara v. Bayer Corp.*, 2010 WL 902780, at *3 (N.D. Cal. Mar. 9,

2010) (staying case pending transfer to MDL and declining to decide motion to remand because plaintiff's complaint failed "to clearly explain the role of McKesson in the injury of these specific plaintiffs and leaves a suspicion that McKesson could have been added to defeat diversity removal"); *see also Wendell v. Johnson & Johnson*, 2012 WL 3042302, at *7 (N.D. Cal. July 25, 2012) ("A plaintiff asserting causes of action for failure to warn must prove not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of a warning caused the plaintiff's injury." (citing *Plummer v. Lederle Labs.*, 819 F.2d 349, 358 (2d Cir. 1987) (applying California law))).  Plaintiffs' allegations simply do not meet the *Iqbal/Twombly* pleading standard.

139.  In addition, Plaintiffs' claims against McKesson for fraud, fraudulent concealment, deceit and negligent misrepresentation (collectively, Plaintiffs' "fraud-based claims") fail because Plaintiffs:  (1) do not identify a single statement made by McKesson that was allegedly deceptive; (2) do not identify a single act by which McKesson allegedly concealed a material fact that it was bound to disclose; and (3) fail to establish any connection between any actions by McKesson and the Plaintiff's use of Lipitor that could possibly satisfy the reliance/causation elements of their fraud-based claims.

140.  Importantly, Plaintiffs must allege each element of each fraud-based claim with the particularity required by Federal Rule of Civil Procedure 9(b).  *See, e.g., Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."); *Young v. Fluorotronics, Inc.*, 2010 U.S. Dist. LEXIS 117362, at *23 (S.D. Cal. Nov. 3, 2010) (quoting *Neilson*, 290 F. Supp. 2d at 1141); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1219 (N.D. Cal. 2007) (dismissing constructive-fraud claims because, *inter alia*, "plaintiffs have not alleged constructive fraud with

particularity," as required under Rule 9(b)). Bald allegations of fraud cannot defeat diversity jurisdiction. *See, e.g., Fisher v. Paul Revere Ins. Grp.*, 55 F. App'x 412, 414 (9th Cir. 2002) (affirming trial court's determination that non-diverse defendant had been fraudulently joined and refusal to remand case to state court where the plaintiff "did not specifically allege facts that would support any of the elements of deceit" with regard to the non-diverse defendant, as required under Rule 9(b)); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 283 (finding defendant sales representatives fraudulently joined because, *inter alia*, plaintiffs did not meet Rule 9(b)'s requirements where they failed to allege "the time and place of particular representations").

141. Here, Plaintiffs have not identified any specific statements that McKesson allegedly made to any Plaintiff regarding Lipitor. Nor have Plaintiffs alleged that any Plaintiff or her physicians or healthcare providers relied on any such statements or any other conduct by McKesson regarding Lipitor, much less with the particularity required by Rule 9(b). For both of these reasons, there is no "possibility" that Plaintiffs can recover against McKesson on their fraud-based claims. *See TPS Utilicom*, 223 F. Supp. 2d at 1102-03 (denying motion to remand and granting motion to dismiss UCL claim where the complaint was "wholly deficient" because it "contain[ed] no factual allegation of factual basis" about any "'unlawful, unfair or fraudulent business *act* or *practice*'" by either resident defendant (citation omitted)); *Aronis v. Merck & Co.*, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder of McKesson where plaintiff "alleg[ed] that McKesson is a major distributor of [the allegedly defective medicine]" but "d[id] not allege that McKesson contributed in any way to her injuries"; "[t]o state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant").

142. Further, the fact that Plaintiffs' legal allegations are targeted at "Defendants" generally, rather than McKesson in particular, demonstrates that McKesson was fraudulently joined as a defendant. In their causes of action, Plaintiffs make only broad, collective, and conclusory claims against a group generically described as "Defendants," lumping McKesson together with Pfizer. (*See* Compl. ¶¶ 133-180.) As numerous courts have concluded, the fact that all of Plaintiffs' legal allegations are targeted at "Defendants" generally, rather than McKesson in particular, reveals that it was fraudulently joined. *See Shah v. Wyeth Pharm., Inc.*, 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) ("[A]llegations against 'defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants." (citation omitted)); *see also Gomes v. Michaels Stores, Inc.*, 2006 U.S. Dist. LEXIS 81354, at *4-7 (E.D. Cal. Oct. 26, 2006) (dismissing non-diverse defendant and refusing to remand case where plaintiff generally "state[d] that all defendants' acts 'were performed partly within and partly outside the course and scope of their authority and employment'" but did not include any specific allegations about the non-diverse defendant (citing complaint)); *Bennett v. Allstate Ins. Co.*, 753 F. Supp. 299, 301 (N.D. Cal. 1990) (denying motion to remand because, *inter alia*, plaintiff's complaint made "no attempt" to "differentiate between the conduct" of the defendants).

143. For all these reasons, McKesson is fraudulently joined, and its citizenship must be disregarded for jurisdictional purposes.

## C.    Plaintiffs Are Procedurally Misjoined

144. Because Plaintiffs have improperly joined the claims of 90 unrelated individuals in a single suit and have thereby frustrated complete diversity, this action is subject to diversity jurisdiction pursuant to the procedural misjoinder doctrine. The doctrine was first articulated by the Eleventh Circuit in its watershed opinion in

1  *Tapscott v. MS Dealer Serv. Corp.*, which held that "[m]isjoinder may be just as

2  fraudulent as the joinder of a resident defendant against whom a plaintiff has no

3  possibility of a cause of action." 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on*

4  *other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

5  Where the doctrine applies, the proper course is for the federal court to sever the suit

6  into separate actions and take jurisdiction over the resulting actions where complete

7  diversity is satisfied.

8      145.  Like fraudulent joinder, the procedural misjoinder doctrine is a

9  practical alternative to forcing a defendant to remedy a defect in complete diversity

10 in state court before removal to federal court.  Unlike fraudulent joinder, procedural

11 misjoinder considers a procedurally improper joinder of parties that frustrates

12 diversity, rather than a substantively improper joinder of parties that frustrates

13 diversity.  "[F]ederal courts are in the best position to respond to the problem of

14 misjoined parties and removal," and "requiring defendants to seek [severance] in

15 state court puts the diversity removal docket in jeopardy and fails adequately to

16 protect defendants' access to federal court." Laura J. Hines & Steven S. Gensler,

17 *Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction*, 57 Ala.

18 L. Rev. 779, 809 (2006).  The procedural misjoinder doctrine "is compelling,

19 especially in the context of MultiDistrict Litigation," *Sutton v. Davol, Inc.*, 251

20 F.R.D. 500, 504 (E.D. Cal. 2008), for "[i]f plaintiffs can escape the MDL by joining

21 multiple, unconnected and non-diverse parties in a state court of their choice, they

22 defeat the purposes of the MDL and deny defendants their right to removal." *In re*

23 *Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570, at *8 (E.D.N.Y. May

24 17, 2013); *accord In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)*

25 *Prods. Liab. Litig.*, 2007 WL 2458021, at *1 (E.D. Pa. Aug. 23, 2007).

26     146.  In applying the procedural misjoinder doctrine, courts have considered

27 (1) whether misjoinder is governed by state or federal procedure and (2) whether

28

improper misjoinder or "egregious" misjoinder is required to justify removal. As set forth below, Pfizer submits that the better reasoned view authorizes removal where an improper joinder under federal procedure frustrates complete diversity.

147. *First*, the impropriety of joinder is determined under federal, not state, procedural rules. *See Tapscott*, 77 F.3d at 1360. Removal jurisdiction "turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941); *accord Chi., R. I. & P. R. Co. v. Stude*, 346 U.S. 574, 580 (1954). Because the purpose of this doctrine "is to provide a remedy when joinder in state court is unfairly restricting access to the federal courts[,] [w]hether the state thinks the party structure is acceptable is wholly beside the point," Hines & Gensler, *supra*, at 814-15, since "the relevant question . . . [is] whether federal jurisdiction should view that case as a whole or by its parts." *Id.* at 819. Just as state law is appropriate for fraudulent joinder because it typically governs diversity cases, *cf.* III.B, *supra*, federal procedure is appropriate for procedural misjoinder, since diversity cases are always governed by federal procedure. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Indeed, "the removal statutes . . . are intended to have uniform nationwide application," *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705 (1972), and "federal law does supply a relevant standard—Federal Rule 20—[which] in no way disturbs the state-defined merits." Hines & Gensler, *supra*, at 814.[10]

148. *Second*, joinder need only be procedurally improper, not egregious, to support removal under the procedural misjoinder doctrine. *See Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 395-97 (S.D. W. Va. 2004). Evaluating just what constitutes

---

[10]    As set forth herein, the application of California's procedural standards would not change the outcome here, since they are nearly identical to Federal Rule 20.

"egregious" misjoinder has proven elusive, "[a]nd the absence of any clear standard as to what constitutes 'egregious' joinder has been cited by some courts as a reason to reject the fraudulent misjoinder doctrine altogether." *In re Propecia*, 2013 WL 3729570, at *5. That standard need not doom the procedural misjoinder doctrine, however, since a pure application of permissive joinder rules provides a clean legal test for evaluating the doctrine. An egregiousness standard, in contrast, inappropriately adds "what would be in essence a state of mind element to the procedural misjoinder inquiry," thus "overly complicat[ing] what should be a straightforward jurisdictional examination." *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004). Moreover, to the extent the egregiousness standard stems from an analogy to "fraudulent" joinder, it is unwarranted, since "fraudulent joinder is a term of art which 'does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive.'" *Greene*, 344 F. Supp. 2d at 685 (citation omitted); *accord In re Propecia*, 2013 WL 3729570, at *5 (observing that fraudulent joinder does not require "an examination of 'the subjective intent behind the preparation or structure of the plaintiff's pleading'" (citation omitted)).[11]

    149. Nevertheless, Plaintiffs are misjoined under any operative procedural misjoinder rule because they provide no basis to find that their claims arise out of the same transaction or occurrence. Under both Federal Rule of Civil Procedure 20 and California Code of Civil Procedure section 378, permissive joinder requires that claims arise out of the same "transaction, occurrence, or series of transactions" and involve common questions of law or fact. *See Adams v. I-Flow Corp.*, 2010 WL 1339948, at *8 (C.D. Cal. Mar. 30, 2010) ("The California rule on joinder of parties

---

[11] Applying an "egregiousness" test would not change the outcome here, for, as explained below, the evidence of bad faith here establishes that Plaintiffs' misjoinder is egregious.

plaintiff is practically identical to [the federal rule].").  Plaintiffs are 90 individuals who plead little information about themselves, and no relation to one another.  The only thing Plaintiffs share in common is their claim to have developed type II diabetes as a result of ingesting Lipitor.

150.  Apart from Plaintiffs' total failure to allege a basis for permissive joinder here, numerous courts have found permissive joinder improper in products liability litigation over prescription medications.  Most significantly, the Ninth Circuit has affirmed dismissals with prejudice in a products liability MDL where similar multi-plaintiff complaints "did not seek relief arising from the same transaction or occurrence," and the plaintiffs failed to file individual complaints as ordered by the district court. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1244 (9th Cir. 2006); *see also Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (affirming severance of immigration claims by 48 unrelated individuals as "square with Federal Rules of Civil Procedure 20 and 21 and the precedent on severance").

151.  In the same manner, numerous district courts have found procedural misjoinder in indistinguishable circumstances.  Those courts have recognized that joinder is improper in such cases "given the complicated causation questions that pervade drug product liability claims." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 1118780, at *4 (D.N.J. Apr. 3, 2012).  Permissive joinder is not satisfied where, as here, "the only unifying factors among the personal injury plaintiffs lie in the allegations that each took [Lipitor] and that each sustained broadly similar injuries as a result thereof." *Cumba v. Merck & Co.*, 2009 WL 1351462, at *1 (D.N.J. May 12, 2009).  No are Plaintiffs' "purchases and ingestion" of Lipitor "a series of transactions or occurrences," for joining "unconnected geographically diverse plaintiffs that present individual circumstances" would "obstruct and delay the adjudication process." *Chaney v. Gate Pharm. (In re Diet*

*Drugs)*, 1999 WL 554584, at *3-4 (E.D. Pa. July 16, 1999). Ultimately, because Plaintiffs have "had drugs prescribed by different doctors for different time periods," their claims "do not arise out of the same 'transaction, occurrence, or series of transactions or occurrences.'" *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) (citation omitted); *see also, e.g., In re Propecia* , 2013 WL 3729570; *Blakeney v. Bayer AG (In re Baycol Prods. Litig.)*, 2003 WL 22341303, at *3 (D. Minn. Jan. 1, 2003); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 146 (S.D.N.Y. 2001).

152.    In addition to procedural misjoinder removal, "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a defective drug or medical device." *Stinnette v. Medtronic Inc.*, 2010 WL 767558, at *2 (S.D. Tex. Mar. 3, 2010).[12] Severance is required where, as here, there were "numerous different . . . physicians involved . . . who are unlikely to have any common link to any two (2) of these plaintiffs, . . . the medical histories of the plaintiffs . . . . are certainly diverse," and the injuries at issue involved different products. *Adams*, 2010 WL 1339948, at *8. Moreover, that Plaintiffs' claims are governed by the law of each of their home states, *see Boaz*, 46 Cal. Rptr. 2d 888, further shows that they do not arise out of the same transaction or occurrence. *See Boschert v. Pfizer, Inc.*, 2009 WL 1383183, at *3-4 (E.D. Mo. May 14, 2009).

153.    Although Plaintiffs do not plead it here, the foregoing authorities recognize the necessarily individualized circumstances that give rise to Plaintiffs' claims. They have distinct medical histories, including a unique treatment regimen,

---

[12]    *Accord, e.g., In re Seroquel Prods. Liab. Litig.*, 2007 WL 737589, at *1 (M.D. Fla. Mar. 7, 2007); *McNaughton v. Merck & Co.*, 2004 WL 5180726, at *1-3 (S.D.N.Y. Dec. 17, 2004); *In re Baycol Prods. Liab. Litig.*, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002); *Warner v. Stryker Corp.*, 2009 WL 1773170, at *1-2 (D. Or. June 22, 2009).

prior history of injury, genetic risk factors, comorbidities, and prescriptions of Lipitor by different physicians.    Plaintiffs purchased Lipitor from different pharmacies, for different purposes, and after different conversations with their physicians.    Plaintiffs used Lipitor at different doses, for different durations, for different conditions, and at different times.    Permissive joinder thus cannot be sustained here.

154.    Finally, although Pfizer submits that mere misjoinder is sufficient to trigger procedural misjoinder removal, the misjoinder here was not merely improper, it was egregious.    Plaintiffs' counsel's mass filing of claims by unrelated individuals shows that, as in other litigations, "the true reason for the joinders is that the collection of Plaintiffs in each case were all part of a certain law firm's existing . . . 'inventory.'"    *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651 (S.D. Tex. 2005).    And since the vast majority of Plaintiffs are diverse from Pfizer, the purpose of the joinder of the non-diverse plaintiffs is evidently to escape diversity jurisdiction as to numerous individuals whose claims would normally be subject to this Court's jurisdiction.    Further, Plaintiffs have improperly omitted any detail concerning their injuries and individual circumstances, lest they expose the numerous differences showing that "these are claims that no 'reasonable person would normally expect to be tried together.'"    *In re Fosamax*, 2012 WL 1118780, at *5 (citation omitted) (finding egregious misjoinder).

155.    Plaintiffs are thus procedurally misjoined.    The Court should sever this case into separate actions by Plaintiff family, conferring diversity jurisdiction over all such cases where the parties are completely diverse.

## III.    PFIZER HAS SATISFIED THE PROCEDURAL REQUIREMENTS
FOR REMOVAL

156.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days of service of the Complaint on Pfizer, which occurred on February 24, 2014.

157.    For purposes of mass action removal, McKesson's consent to removal is not required. *See* 28 U.S.C. § 1453(b). For purposes of traditional diversity jurisdiction, McKesson is not required to join in or consent to removal since it is alleged to be fraudulently joined. *See* 28 U.S.C. § 1446(b)(2)(A).

158.    For purposes of mass action removal, McKesson's forum citizenship is not a bar to removal. *See* 28 U.S.C. § 1453(b). For purposes of traditional diversity jurisdiction, McKesson's forum citizenship is not a bar to removal since it is alleged to be fraudulently joined. *See* 28 U.S.C. § 1441(b)(2).

159.    This action, filed in the California Superior Court of Los Angeles County, is being removed to the district and division embracing the place where the action is pending. *See* 28 U.S.C. § 1441(a).

160.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served on the Removing Defendant, which papers include the Complaint, are attached collectively as Exhibit A.

161.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Superior Court of the County of Los Angeles.

WHEREFORE, the Removing Defendant respectfully removes this action from the Superior Court of the County of Los Angeles, in the State of California, bearing number BC536940, to this Court.

Dated: March 12, 2014

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____
Marshall M. Searcy III

*Attorneys for Defendant Pfizer Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____John F. Walter_____ and the assigned Magistrate Judge is _____Michael R. Wilner_____.

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-01832 JFW-MRWx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____March 12, 2014_____
Date

By _SBOURGEOIS_____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

**CONFORMED COPY**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| LINDA ROY, DEBORAH GIBSON, JANET HANSON, EVALINE ROXANNE MOORE, ARLENE BECKWITH, SUZANNE BIENIEWICZ, GUDFRIDUR BISBEE, SANDRA BURNETT, JEAN CASEY, BERNICE CASSIDY, JOSEPHINE CHESTUNT, MARY CLARK, et al. | Pfizer Inc.; McKesson Corporation; and Does 1-50, inclusive. |

| (b) County of Residence of First Listed Plaintiff   Los Angeles | County of Residence of First Listed Defendant   NY and DE |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Eric W. Gruenwald, Esq. (CA 188862)<br>THE MULLIGAN LAW FIRM<br>3710 Rawlins Street, Suite 901<br>Dallas, Texas 75219, 214/219-9779 | Marshall Searcy, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017, (213) 443-3000 |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1441(b); Personal injury; products liability

### VII. NATURE OF SUIT (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV14-1832

| FOR OFFICE USE ONLY: | Case Number: | |
|---|---|---|
| CV-71 (11/13) | CIVIL COVER SHEET | Page 1 of 3 |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [X] Yes  [ ] No | [X] Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes  [ ] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

**C.1. Is either of the following true? If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C.2 to the right.  ➡

**C.2. Is either of the following true? If so, check the one that applies:**

[ ] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | Western |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s):  _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☐ NO   ☒ YES

If yes, list case number(s):   Please see Notice of Related Cases

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):**   *Marshall Searcy*   DATE: March 12, 2014.

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

FEB 21 2014

Sherri R. Carter, Executive Officer/Clerk
By: Kristina Vargas, Deputy

1 | Eric W. Gruenwald, Esq. (CA 188862)
**THE MULLIGAN LAW FIRM**
2 | 3710 Rawlins Street, Suite 901
Dallas, Texas 75219
3 | Tel: (214) 219-9779
Fax: (214) 520-8789
4 | egruenwald@mulliganlaw.com

5 | Attorneys for Plaintiffs

6 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

7 | FOR THE COUNTY OF LOS ANGELES

8 | LINDA ROY, DEBORAH GIBSON, JANET ) Case No.: _____ **BC536940**
HANSON, EVALINA ROXANNE )
9 | MOORE, ARLENE BECKWITH, ) **COMPLAINT FOR DAMAGES,**
SUZANNE BIENIEWICZ, GUDFRIDUR ) **RESTITUTION, AND INJUNCTIVE**
10 | BISBEE, SANDRA BURNETT, JEAN ) **RELIEF; DEMAND FOR JURY TRIAL**
CASEY, BERNICE CASSIDY, JOSEPHINE )
11 | CHESTNUT, MARY CLARK, ANNIE ) 1. Strict Liability – Failure to Warn
COLEMAN, DELORES CONGROVE, ) 2. Strict Liability – Manufacturing Defect
12 | ROSE CONLEY, MOLLIE CORNS, ) 3. Negligence
MARIA COTTO, SHARI DANN, MARIA ) 4. Breach of Express Warranty
13 | DIAZ, CAROL EBERT, BERNITA ELKO, ) 5. Breach of Implied Warranty
LESSIE ELZA, DONNA EMERSON, LUZ ) 6. Fraud
14 | ESCALERA, LELIA FERGUSON, KAREN ) 7. Fraudulent Concealment
FETHEROLF, YOLANDA R. FLANAGAN, ) 8. Violation of Business & Professions
15 | THERESA FLOWERS, VICKIE )      Code § 17200
FORESMAN, CYNTHIA FORTSON, ) 9. Violation of Business & Professions
16 | ANNA GRESKO, GLADYS GUADALUPE, )      Code § 17500
JESSIE HAMILTON, SANDRA HAUN, )
17 | KIMBERLEA HAYNES, MARTHA )
HICKS, EMMA HICKSON, SHIRLEY )
18 | HUDSON, CARMELLA JACKSON, )
RHODELLA JONES, JEANIE JURGEIT, )
19 | CAROL KELLEY, SUSAN KENNEDY, )
ROBIN LABERTAGAVADIN, MARLENE )
20 | LAVANGO, LORI LAWRENCE, DONNA )
LAWSON, DONNA LEWIS, SANDRA )
21 | LEWIS, MARY LOTT, MARGARET )
MARTIN, MARY MCKNIGHT, )
22 | DOUGLETHA MCNEAL, LINDA S. )
MORAN, JUDITH MORGAN, LINDA )
23 | MORTON, LYVONNE MOSS, LENA )
MURCH, ANITA OPERARIO, )
24 | MICHELENA PARKER, VIRGINIA )
PETAK, CAROL PETERS, NINA PORTER, )
25 | EMMA PRATT, MINETTE PRICE, PATTI )

26 |

27 |

28 |

1
COMPLAINT FOR DAMAGES

1   REEDER, NORA REYNOLDS,                    )
    ELIZABETH RHOADS, ANNA RIDER,             )
2   LACHELLE ROGERS, LOIS                     )
    ROSENHAHN, POONIA SAMUEL,                 )
3   LINDA SAURER, CHRISTINE SHAFER,           )
    BERNADETTE SIROCKA, ELLA SMITH,           )
4   TONIA SMITH, PATRICIA SOSKIN,             )
    TERRY SPRINGER, CHERYL                    )
5   STARCHER, CAROL STEINIGER,                )
    JANICE STEWART, LAURA STEWART,            )
6   BEATRICE TUCKER, KATHIE VAN               )
    EPPS, GILA VAN VALKENBURG,                )
7   CAROLYN WAHL, BARBARA                     )
    WEINTRAUB, DOLORES WIEST, AND             )
8   BARBARA WILLIAMS,                         )
9                                             )
                    Plaintiffs                )
10                                            )
11              vs                            )
                                              )
12  PFIZER, INC.; MCKESSON                    )
    CORPORATION; and DOES 1-50,               )
13  inclusive,                                )
                    Defendants                )
14  ───────────────────────────────────      )

15

16          PLAINTIFFS, by and through counsel, for their Complaint against Defendants, allege as

17  follows:

18                          PARTIES AND JURISDICTION

19          1.      Plaintiff **Linda Roy** is and at all relevant times a citizen and resident of the State of

20  California, Los Angeles County.  Plaintiff **Linda Roy** brings this action for personal injuries

21  sustained by the use of LIPITOR® (atorvastatin calcium), and as a direct and proximate result of

22  being prescribed and ingesting LIPITOR®, Plaintiff **Linda Roy** was diagnosed with Diabetes

23  Mellitus Type II.

24          2.      Plaintiff **Deborah Gibson** is and at all relevant times a citizen and resident of the

25  State of California.  Plaintiff **Deborah Gibson** brings this action for personal injuries sustained by

26  the use of LIPITOR® (atorvastatin calcium), and as a direct and proximate result of being

27  prescribed and ingesting LIPITOR®, Plaintiff **Deborah Gibson** was diagnosed with Diabetes

28  Mellitus Type II.

COMPLAINT FOR DAMAGES